**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DANIEL OKOE,
*on behalf of himself and others similarly situated*,

      Plaintiff,

          v.

IBERIA FOODS CORP.

      Defendant.

---

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff DANIEL OKOE ("Plaintiff OKOE" or "Plaintiff"), individually and on behalf of all other persons similarly situated in New York and the United States, by his undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, IBERIA FOODS CORP., alleges the following:

## <u>NATURE OF THE ACTION</u>

      1.      This is a consumer protection action arising out of the deceptive and otherwise improper business practices that Defendant, IBERIA FOOD CORP., ("Iberia" or "Defendant"), engages in through the packaging, marketing, and sale of the 68 Fl. Oz. Iberia Premium Blend Extra Virgin Olive Oil ("the Product"). The Product is sold in misleadingly labeled containers where the words "Extra Virgin Olive Oil" are emboldened and holographic whilst the words

"Sunflower Oil &" above these are printed inconspicuously in indistinct, camouflaged ink and narrow font that is barely distinguishable from the background and is readily overlooked by consumers. Below is an image of the Product:



2.      The "Extra Virgin Olive Oil" is in conspicuous gold that is prominent to the eye. By contrast, the sunflower oil disclosure is in black typeset that blends into the dark green background and will be readily missed once the more ostentatious olive oil disclosure catches the hurried shopper's eye.

3.      By highlighting and emboldening "Extra Virgin Olive Oil" while simultaneously obscuring "Sunflower Oil &" in camouflaged ink, Defendant intends to mislead the rushed and unsuspecting consumer into believing that the Product is entirely comprised of Extra Virgin Olive Oil. Defendant intends for consumers to believe that they are purchasing a product which they are not.

4.      This deception is particularly brazen and egregious given that the Product is only 20% extra virgin olive oil and an entire 80% refined sunflower oil.  Defendant thus goes out of its way to highlight the minor ingredient while obscuring the major one.

5.      Olive oil has a clear appeal to consumers not present in sunflower oil. According to the New England Journal of Medicine, consuming extra virgin olive oil may reduce the risk of heart attack, stroke, or dying of heart disease by as much as 30%[1]. According to professors at the University of Florida, extra virgin olive oil may prevent cancer and Alzheimer's disease[2].

6.      For these reasons among others, extra virgin olive oil is routinely priced more expensively than sunflower oil.

7.      Through the labeling of the Product, the Defendant has consistently conveyed its uniform and deceptive claims about the content of the Product.

8.      Defendant has deceived Plaintiff and other consumers by inducing them to reasonably rely on Defendant's misrepresentations and purchase the Product which Plaintiff and

---

[1] http://www.nejm.org/doi/full/10.1056/NEJMoa1200303?query=featured_home&
[2] http://www.ulm.edu/news/2017/0525-elixir-of-life.html

Class members would not have purchased had they known the truth. Through these unfair and deceptive practices, Defendant has collected millions of dollars from the sale of its Product that it would not have otherwise earned. Plaintiff brings this action to stop Defendant's deceptive practices.

9.     This lawsuit seeks redress for the misleading manner in which the Defendant has marketed the Product and continues to market the Product. Plaintiffs bring this proposed consumer class action individually and behalf of all other persons similarly situated, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product for consumption and not for resale.

10.     Through this action, Plaintiff seeks actual damages, restitution and/or disgorgement of profits, statutory damages, attorneys' fees, costs and all other relief available to the Class as a result of Defendant's unlawful conduct.

11.     Defendant violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480 1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS Section 505/1, *et seq.*;
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

*16)* Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

*17)* Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;

*18)* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

*19)* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

*20)* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.*;

*21)* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

*22)* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)* Michigan Consumer Protection Act, § 445.901, *et seq.*;

*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.*;

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.* ;

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising, N.Y. Gen. Bus. Law § 350, *et seq.*;

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51 15 01, *et seq.*;

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37 24 1, *et seq.*;

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*44)* Texas Stat. Ann. § 17.41, *et seq.*, Texas Deceptive Trade Practices Act, *et seq.*;

*45)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

*47)* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

## JURISDICTION AND VENUE

12.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.     This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant because its principal place of business is in New York and because Plaintiff purchased the Product in New York.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to class members residing in this District, and because it is subject to personal jurisdiction in this district.

## PARTIES

*Plaintiff*

15.     Plaintiff DANIEL OKOE is, and at all relevant times hereto has been, a citizen of New York and a resident of New York County. On March 15, 2017, Plaintiff purchased the Product at Target at 112 W 34th St in Manhattan. Plaintiff purchased the Product for $8.19 and was financially injured as a result of Defendant's deceptive conduct as alleged herein because he did not receive the olive oil he intended to purchase.  Since Defendant printed "Sunflower Oil &" in camouflaged ink, Plaintiff did not see those words on the label and reasonably believed he was purchasing 68 Fl. Oz. of extra virgin olive oil. If Plaintiff had known the Product was 80% sunflower oil, he would not have purchased it.

16.     As the result of Defendant's deceptive conduct as alleged herein, Plaintiff DANIEL OKOE was injured when he was deceived into purchasing a Product that he did not intend to purchase and therefore had no value for him.

***Defendant***

17.     Defendant, IBERIA FOODS CORPS., is a corporation organized under the laws of Delaware with its headquarters at 1900 LINDEN BOULEVARD, BROOKLYN, NEW YORK, NY 11207. Defendant manufactures, packages, distributes, advertises, markets, and sells the Product to millions of customers nationwide. Defendant's address for service of process is Jim Tully, Iberia Foods Corp., 1900 Linden Boulevard, Brooklyn, NY 11207.

18.     The labeling and advertising for the Product, relied upon by Plaintiff, were prepared and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. Such labeling and advertising were designed to encourage consumers to purchase the Product and misled reasonable consumers, including Plaintiff and the Class, into purchasing the Product. Defendant owns, markets and distributes the Product, and creates and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling and advertising for the Product.

## FACTUAL ALLEGATIONS

### Defendant's Deception is Material to a Reasonable Consumer

19.     Defendant's deception is material to a reasonable consumer because olive oil and sunflower oil are two very different products that do not ordinarily substitute for each other.

20.     Notably, reasonable consumers believe that olive oil is significantly healthier than sunflower oil.  As explained on *stylecraze.com*:

> **Verdict: Olive Oil Is Better!**
> From the above comparison, it is clear that olive oil is healthier than sunflower oil in terms of Vitamin K content, fatty acids and minerals. Olive oil does not interfere

7

with the omega 6 fatty acid and omega 3 fatty acid balance, whereas sunflower oil may increase the ratio of these fatty acids. The polyunsaturated fats in sunflower oil can make it go rancid more easily than olive oil. Olive oil also has a fruity taste unlike sunflower oil, which is bland.

So, the next time you go shopping for cooking oil, make sure you make the right choice![3]

21.     The health differences are particularly consequential when these products are used as cooking oil, as sunflower oil then presents health risks not presented by olive oil.  As the BBC explains:

When it comes to fats and oils, we are spoiled for choice. Supermarket shelves are heaving with every conceivable option. But these days it is extremely confusing because there is so much debate about the benefits and harm that come from consuming different types of fats.

Samples of oil and fat, after cooking, were collected and sent to Leicester School of Pharmacy at De Montfort University in Leicester, where Prof Martin Grootveld and his team ran a parallel experiment where they heated up these same oils and fats to frying temperatures.

When you are frying or cooking at a high temperature (at or close to 180C or 356F), the molecular structures of the fats and oils you are using change. They undergo what's called oxidation - they react with oxygen in the air to form aldehydes and lipid peroxides. At room temperature something similar happens, though more slowly. When lipids go rancid they become oxidised.

Consuming or inhaling aldehydes, even in small amounts, has been linked to increased risk of heart disease and cancer. So what did Prof Grootveld's team find?

"We found," he says, "that the oils which were rich in polyunsaturates - the corn oil and sunflower oil - generated very high levels of aldehydes."

I was surprised as I'd always thought of sunflower oil as being "healthy".

"Sunflower and corn oil are fine," Prof Grootveld says, "as long as you don't subject them to heat, such as frying or cooking. It's a simple chemical fact that something which is thought to be healthy for us is converted into something that is very unhealthy at standard frying temperatures."

---

[3] https://www.stylecraze.com/articles/sunflower-oil-vs-olive-oil-better/#gref

The olive oil and cold-pressed rapeseed oil produced far less aldehydes, as did the butter and goose fat. The reason is that these oils are richer in monounsaturated and saturated fatty acids, and these are much more stable when heated. In fact, saturated fats hardly undergo this oxidation reaction at all.

Prof Grootveld generally recommends olive oil for frying or cooking. "Firstly because lower levels of these toxic compounds are generated, and secondly the compounds that are formed are actually less threatening to the human body."[4]

22.     Defendant's deceptive practices are particularly egregious given that 80% of the Product consists of _refined_ sunflower oil, a process that eviscerates whatever nutritional value sunflower oil might otherwise have.  As explained on *activationproducts.com*:

**You get what you pay for**
The companies that are manufacturing refined sunflower oil for use in cooking or processed food production are purchasing the cheapest seeds available. They are not investing in non-GMO, organic seeds. Their seeds are exposed to pesticides and other toxins and are of low quality.

To make matters worse, the oil is extracted from the seeds using high temperatures, friction and even chemical solvents, all of which lead to damaged oil that begins going rancid before it's even bottled.

There's no point in buying high-quality seeds if you're going to destroy the nutritional value in the extraction process, right?

Adding insult to injury, to make the oil look and smell more appealing, companies will often bleach their oil before they bottle it. This process removes any cloudiness from the oil, makes it lighter in color, and removes its natural scent. It also makes it much more difficult to determine whether or not the oil is rancid.

**How can vegetable oils harm my health?**
In its unrefined state, pressed without the high temperatures, chemical solvents and bleach, sunflower oil *can* be very nutritious.

It can help keep your heart healthy and reduce the risk of heart attacks, provide you with more energy, boost your immune system, reduce inflammation and it even has some impressive beauty benefits, like improving the look and feel of your skin and hair. Check out this blog post for more specifics on the benefits.

When you reach for a grocery store bottle of sunflower oil, though, you won't be getting *any* of those benefits and **it can even do you harm**.

---

[4] https://www.bbc.com/news/magazine-33675975

When oil is refined with heat or chemicals, the nutrients are broken down or stripped away. Colleen M. Story at RenegadeHealth.com describes the loss: "Even in oils that are simply heated, there can be a loss of valuable nutrients, including tocopherols, sterols, and antioxidant carotenoids. That's why many prefer cold-pressed oils when possible, as they are more likely to retain the maximum amount of nutrients."

Not only that but the heat used to extract the oils can also damage the bonds of the unsaturated fats, which causes them to go rancid.

Rancid oils can cause free radical cells to form. Free radicals 'steal' electrons from other cells and mutate them, leaving your body vulnerable to disease. **This is called oxidative stress — learn more here.**

Obviously, if you want to benefit from sunflower oil you need to find high-quality oil that is pressed without heat or chemicals.[5]

23.     Health considerations aside, olive oil and sunflower oil usually serve very different culinary purposes, such that one may be appropriate where the other is not. Answering "Can I use sunflower oil in place of olive oil for salads?," trained chef Tilman Ahr explains on Quora:

In principle, yes.

It just doesn't taste like olive oil. Sunflower oil is quite neutral in taste, really, so it's a relatively poor substitute for a salad that's just served with oil and vinegar. As part of a more aromatic vinaigrette, dressing or something like that it will work a lot better.

For some dressings, it's actually preferable to an aromatic olive oil, since the latter will tend to overpower more subtle other ingredients, or simply not harmonize with them.[6]

24.     Olive oil and sunflower oil may also serve different purposes when it comes to baking, with olive oil providing a savory flavor unavailable from other sources. Elie Krieger writes in *finecooking.com*:

Some baked goods, like biscotti, Mediterranean-style fruit cakes, and olive bread, are traditionally made with olive oil. But you can also use it as an easy replacement for melted butter or vegetable oil in many muffin recipes and quick bread recipes.

---

[5] https://www.activationproducts.com/blog/the-dangers-of-sunflower-oil/
[6] https://www.quora.com/Can-I-use-sunflower-oil-in-place-of-olive-oil-for-salads

Swapping in olive oil gives you a double whammy of goodness: First, it makes baked goods better for you by supplying healthy fat and antioxidants, and second, it adds incredible depth of flavor.[7]

**Defendant's Misrepresentation would Deceive and be Relied Upon by a Reasonable Consumer**

25.     Defendant may argue that it does disclose the fact that the Product consists in part in sunflower oil, even if this disclosure is less prominent that than the olive oil disclosure.  This is irrelevant, however, as students of consumer behavior regularly recognize that differences in font style have a profound effect on how consumers perceive a product, causing them to notice some things while overlooking others.

26.     Fort Dearborn Company, a consultancy offering customized label management to clients explains the crucial role of font choice in capturing consumers' attention, stressing how little time most consumers spend deciding whether to purchase a Product:

**It only takes about 7 seconds for a consumer to make up their mind.** Brands have an incredibly small window to make a positive impression on prospective buyers. It is essential that products are packaged in a way that stands out from other items on the shelf.

**Font:** A package's font choice is vital in either capturing the consumer's attention, or turning them away completely. Font communicates the product's personality in the most noticeable way. Readability of the font is important, as an interesting yet clear font will draw consumers in, while hard to read or outdated fonts will have the opposite effect in turning buyers away. Of the thousands of fonts brands have at their disposal, companies must consider how their target audience will react to different styles. *A whimsical font*, a FORMAL font, and **a bold font** all provoke an immediate and powerful reaction within consumers based on age, gender, lifestyle, and industry.[8]

27.     In a similar vein, custom label manufacturer *United Ad Label* observes:

---

[7] https://www.finecooking.com/article/baking-with-olive-oil
[8] https://www.fortdearborn.com/label-design-influences-consumer-purchases/ (emphases added)

**<u>Timid Labels Miss The Mark!</u>**
<u>Varying the size and weight of the font you choose for your label design will help
to emphasize the most important information.</u> For example, does your label convey
a critical dosage amount or other important instructions? Perhaps that information
should be in BOLD, ALL CAPITAL LETTERS.[9]

28.     Likewise, *InVerve*, another marketing consultancy, notes:

Studies reveal that 93% of consumers rely on visual appearance when looking at
new products, 85% say color is a primary reason for why they bought a product,
and 90% say that their impulse buys are based on color alone.

Marketers who understand the psychology of color and how it affects behavior can
use that knowledge to advantage through the strategic use of color on packaging,
signage, product materials, etc, causing a major impact on a consumer's purchasing
decisions.[10]

29.     These expert conclusions explain the effectiveness of Defendant's deceptive
practices.  Defendant may argue that consumers can see "Sunflower Oil &" if they inspect the
label closely and carefully.  But reasonable consumers will not do so once their attention has been
captured by the much clearer and more conspicuous olive oil disclosure.  Since reasonable
consumers do not assume they are the targets of a deceptive consumer, Plaintiff and the Class had
no reason to second-guess their initial impression that the Product is entirely olive oil.

30.     The above conclusions are fully supported by academic research.  Writing in the
International Research Journal of Marketing and Economics, Abbas Dadras reviews the scholarly
literature:

The content of the text, languages used and ease of comprehension are part of
package communication and affect how the written messages are interpreted
(Mutsikiwa et al. 2013). Hence, Nayyar's (2012) believe that Words and
typography are the most important factor to attract consumers and product selection
after colors and shapes. Typography encompasses several different variables, e.g.
the font type and variety of font types, font size, color contrast, empty space around
the text, location of the text, etc. Even a simple change of the font type of the

---

[9] https://www.unitedadlabel.com/blog/how-to-use-type-font-in-your-label-design.html (emphasis
added)
[10] https://blog.invervemarketing.com/the-effects-of-color-on-consumer-behavior

package text can change the packaging communication substantially and affect product positioning (Lyytikäinen & Riikonen 1998, as cited in Mutsikiwa, Marumbwa & Mudondo 2013). Dantas M. et al (2011) <u>believe that Font size is very important, because it attracts customer attention and can confusion or misleads buyers with information in buying</u>. According to Deliya & Parmar (2012), the font style of Packaging grabs customer attraction.[11]

Small font size and dense writing styles of the labels often lead to poor readability (Variawa 2010; Karimi, Mahdieh & Rahmani 2013). One way consumers reduce this clutter and paradox of choice is by narrowing down choice sets (Variawa 2010). <u>The readability of the text is a remarkable factor possibly causing everyday challenges to the end users</u>, especially among elderly people. Therefore, it is very important to pay attention to typographic variables in package design (Mutsikiwa, Marumbwa & Mudondo 2013). Mutsikiwa & Marumbwa (2013) also emphasized that legibility and readability of the product package are critical concepts of the product typography mostly because, when products are displayed on the shelf, the rationale for package typography is to reduce the time spent looking for the particular brand, by ensuring that the consumer easily locates, identify and notices their preferred brand.[12]

31.    The fact that readers can discover the (80%) presence of sunflower oil in the product by reading the back label of the Product does not cure Defendant's deception, especially as someone deceived into believing that the Product was entirely olive oil would have no reason to inspect the back label. *See Ackerman v. Coca-Cola Co*., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *62-63 (E.D.N.Y. July 21, 2010) ("[T]he presence of a nutritional panel, though relevant, does not as a matter of law extinguish the possibility that reasonable consumers could be misled by vitamin water's labeling and marketing."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.").

---

[11] Abbas Dadras, *International Research Journal of Marketing and Economics*, Volume 2, Issue 4 (April 2015) ISSN: (2349-0314), pgs. 18-19 (emphasis added)

[12] Abbas Dadras, *International Research Journal of Marketing and Economics*, Volume 2, Issue 4 (April 2015) ISSN: (2349-0314), pg. 19 (emphasis added)

32.     While Defendant may implausibly insist that the sunflower oil disclosure was clear enough to preempt consumer confusion, this is at any rate a question of fact to be decided by a trier of fact and accordingly cannot be disposed of on a motion to dismiss.  *See Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *49 (E.D.N.Y. Sep. 22, 2015) ("the mere inclusion of an accurate disclaimer does not necessarily cure other potentially misleading statements or representations set forth in a label or advertisement."); *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 U.S. Dist. LEXIS 135758, at *24 (E.D.N.Y. Sep. 23, 2014) ("[a] solicitation may be likely to mislead by virtue of the net impression it creates even though the solicitation also contains truthful disclosures.") (quoting *F.T.C. v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006)); *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 464 (E.D.N.Y. 2013) ("At this early stage of the litigation, it cannot be determined whether a disclaimer on the back of Ester-C's Product, stating that it is 'not intended to diagnose, treat, or prevent any disease,' eliminates the possibility of a reasonable consumer being misled into thinking that Ester-C's claims of being the 'Better Vitamin C' that 'provides advanced, active immune system support' and 'antioxidant support' to 'help keep you healthy and strong during times of seasonal change' signified a cold or flu prevention product."); *Direct Capital Corp. v. New ABI, Inc.*, 2006 NY Slip Op 26408, ¶ 9, 13 Misc. 3d 1151, 1163, 822 N.Y.S.2d 684, 693-94 (Sup. Ct.) ("This court finds the disclaimer at issue not to be conspicuous but rather to be deliberately obscured in the single-spaced, fine print, multiple provisions of boilerplate of the agreement so as to conceal its effect rather than drawing the reader's attention to it.").

**Plaintiff's Claims are Consistent with Federal and State Laws Prohibiting Misbranded Foods**

33.     According to the FDA, the principal display panel of a food product is the part of a label that is most likely to be displayed under customary conditions for retail sale. 21 CFR § 101.1. The principal display panel must contain a statement of identity. 21 CFR S 101.1(a). The statement of identity must be 1) a name required by law or 2) a common or usual name of the food or 3) an appropriate descriptive term. 21 CFR § 101.3(b). The words in the statement of identity must be in bold type. 21 CFR § 101.3(d). These words must be placed "prominently…with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use."  9 C.F.R. § 317.2(b).  If there is "insufficient background contrast," the information on the statement of identity may lack sufficient prominence and conspicuousness. 21 CFR § 101.5(a)(6).

34.     Defendant's sunflower oil disclosure was *designed* to create "insufficient background contrast."

35.     Furthermore,

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere on the labeling

21 CFR § 101.18(b).

36.     The purpose of Defendant's unusual and counterintuitive labeling practices is simply to violate this requirement with a patina of plausible deniability.

37.     Courts have noted the incorporation of FDA regulations into New York law in evaluating claims brought under NY GBL § 349. See *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *13 (E.D.N.Y. July 21, 2010) ("New York's

Agriculture and Marketing law similarly provides in relevant part that food shall be deemed misbranded '[i]f its labeling is false or misleading in any particular,' and incorporates the FDCA's labeling provisions"). *Izquierdo*, 2016 U.S. Dist. LEXIS 149795, at *11 ("Here [in a case brought under NY GBL § 349], New York law expressly incorporates the standard imposed by the FDCA.").

**Plaintiff and Class Members Were Injured as a Result of Defendant's Deceptive Practices**

38.     Plaintiff and the Class were injured by Defendant's deceptive practices when they were deprived of the benefit of their bargains.  They paid the sums they paid for olive oil but actually received a product that was mostly sunflower oil.

39.     Since olive oil and sunflower oil are very different oils with dissimilar culinary functions.  Thus, they do not serve as substitutes for one another, and someone who went to the store to purchase the one would not be content having received the other.  Thus, Plaintiff and the Class received a worthless product and are accordingly entitled to damages in the amount of the entire purchase price.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff DANIEL OKOE brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

41.     In the alternative, Plaintiff OKOE seeks to represent:

> All persons or entities who made retail purchases of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

42.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

43.     Class members are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

44.     Plaintiff's claims are typical of the claims of Class members as they all are similarly affected by Defendant's wrongful conduct.

45.     Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

46.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

47.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

i.  Whether Defendant packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members using false, misleading and/or deceptive labeling;

ii.  Whether Defendant omitted and/or misrepresented material facts in connection with the packaging, marketing, advertising and/or sale of its Product;

iii.  Whether Defendant's packaging, marketing, advertising and/or selling of its Product constituted an unfair, unlawful or fraudulent practice;

iv.  Whether Defendant purposefully mislabeled the Product;

v.  Whether the labeling of the Product during the class period contained the misleading representations;

vi.  Whether the words, "Sunflower Oil &" have been rendered deceptively inconspicuous such as to lead consumers to believe that the Product consists entirely in olive oil;

vii.  Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

viii.  The appropriate measure of damages and/or other relief.

48.    The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

49.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

18

forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

50.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

51.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

52.     The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

53.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

**(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

54.     Plaintiff OKOE realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

55.     NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

56.     Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

57.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

58.     Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

59.     Defendant's Practices described throughout this Complaint, were specifically directed to consumers.

60.     The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Product as consisting entirely in olive oil by rendering inconspicuous its sunflower oil content, are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

61.     Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

62.     Defendant's deceptive practices were knowing and willful because there could be no reason for making a secondary (but more valuable) ingredient more prominent and conspicuous than the primary (but less valuable) ingredient other than to deceive.

63.     Defendant's actions impact the public interest because Plaintiff and Class members were injured in exactly the same way as millions of others purchasing the Products as a result of and Defendant's generalized course of deception.

64.     The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

65.     Defendant should be enjoined from labeling the Product in such a way as to make its olive oil content—the primary ingredient—less prominent and conspicuous than its olive oil content, its secondary ingredient.  Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT II

## DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350

## (FALSE ADVERTISING LAW)

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

66.     Plaintiff OKOE realleges and incorporates by reference the allegations contained in all preceding paragraphs and further allege as follows:

67.     Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

68.     New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

69.     Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

70.     Defendant's deceptive practice of highlighting the Product's olive oil content while obscuring and rendering inconspicuous its sunflower oil content is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

71.     The aforementioned practice is likely to deceive a reasonable consumer.

72.     Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

73.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**COUNT III**

**COMMON LAW FRAUD**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

74.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

75.     Through its Product labeling, Defendant intentionally made materially misleading representations regarding the type of the oil that purchasers were actually receiving.

23

76.     Plaintiff and Class members relied upon Defendant's misleading representations and did not know the truth about the Product at the time they purchased it.  Defendant intended that Plaintiff and Class members rely upon these representations.

77.     Defendant's deceptive practices were knowing and willful, since they were precisely calibrated to induce consumer confusion.

78.     Had Plaintiff and the Class known that the Product was 80% sunflower oil, they would not have purchased the Product.

79.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

80.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund compensating them in the amount of the purchase price.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.  An Order that this action be maintained as a class action and appointing Plaintiff as representative of the Nationwide Class or, alternatively, the New York Class;

b.  An Order appointing the undersigned attorney as class counsel in this action;

c.  Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.  All recoverable compensatory and other damages sustained by Plaintiff and the Class;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and the Class and in the maximum amount permitted by applicable law;

f.  Injunctive relief barring Defendant's deceptive labeling practices by requiring that the sunflower oil disclosure be just as prominent as the olive oil disclosure;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.


Dated: October 5, 2018

Respectfully submitted,


/s/ *C.K. Lee*
By:  C.K. Lee, Esq.


**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*