**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
DANIEL OKOE,
*on behalf of himself and others similarly situated*,

                                          Case No.:18-cv-09161 (VEC)(KNF)

                        Plaintiff,

        -against-

IBERIA FOODS CORP.,

                        Defendant.

---------------------------------------------------------------X

-------------------------------------------------------------------------------------------------------------
MEMORANDUM OF LAW OF DEFENDANT
IBERIA FOODS CORP. IN
SUPPORT OF MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)
-------------------------------------------------------------------------------------------------------------

                        CYRULI SHANKS HART & ZIZMOR LLP
                        Attorneys for Defendant
                        Iberia Foods Corp.
                        420 Lexington Avenue
                        Suite 2320
                        New York, NY 10170
                        (212) 661-6800

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT………………………………………………………………………..6

PLAINTIFF HAS FAILED TO STATE A CLAIM
UPON WHICH RELIEF MAY BE GRANTED
PURSUANT TO RULE 12(B)(6) ................................................................................ 7

I.      PLAINTIFF FAILS TO STATE A CLAIM BECAUSE
THE COMPLAINT DOES NOT PLAUSIBLY ALLEGE
THAT A REASONABLE CONSUMER WOULD BE
MISLED BY THE PRODUCT'S LABELING ........................................... 7

THE LABEL AT ISSUE IS NOT MISLEADING.................................... 8

IF THE FRONT LABEL OF THE PREMIUM
BLEND OIL IS DEEMED AMBIGUOUS, IT MAY
BE CLARIFIED BY THE INGREDIENTS LABEL............................... 15

II.     PLAINTIFF DID NOT ALLEGE AN INJURY UNDER THE GBL ....................... 18

III.    PLAINTIFF'S COMMON LAW FRAUD CLAIM
MUST BE DISMISSED BECAUSE THE LABEL
IS NOT MISLEADING............................................................................ 20

IV.    PLAINTIFF'S COMMON LAW FRAUD CLAIM
MUST BE DISMISSED BECAUSE PLAINTIFF
CANNOT ESTABLISH REASONABLE RELIANCE ............................ 20

V.     PLAINITIFF'S COMMON LAW FRAUD CLAIM
MUST BE DISMISSED BECAUSE HE FAILS TO
SUFFICIENTLY ALLEGE FRAUDULENT INTENT ............................ 21

VI.    PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND ................................... 24

CONCLUSION…………………………………………………………………….24

i

## TABLE OF AUTHORITHIES

**CASES**

*Ackerman v. Coca-Cola Co.*,
    2010 WL 2925955, at \*15 (E.D.N.Y. July 21, 2010)............................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................... 8

*Belcastro v. Burberry Ltd.*,
    2017 WL 744596, at \*3 (S.D.N.Y. Feb. 23, 2017)................................................... 20

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007). ................................................................................................... 8

*Bowring v. Sapporo U.S.A.*,
    *Inc.*, 234 F. Supp. 3d 386 (E.D.N.Y. 2017) ....................................................... passim

*Braynina v. TJX Cos.*,
    15-CV-5897 (KPF), 2016 WL 5374134, at \*10 (S.D.N.Y. Sept. 26, 2016) ............................ 20

*Catalano v. BMW of N. Am., LLC*,
    167 F. Supp. 3d 540 (S.D.N.Y. 2016) ............................................................... 22, 24

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..................................................................................... 8

*DaCorta v. AM Retail Group, In*c.,
    2018 WL 557909 \*7 (S.D.N.Y., 2018) .............................................................. 19, 20

*Daniel v. Mondelez Int'l, Inc.*,
    287 F. Supp. 3d 177 (E.D.N.Y. 2018) ................................................................ 15, 21

*Daniel v. Tootsie Roll Industries, LLC*,
    2018 WL 3650015, \*11-14 (S.D.N.Y. Aug. 1, 2018) ........................................ 15, 22

*Dash v, Seagate Tech. (U.S.) Holdings, Inc.*,
    27 F. Supp. 3d 357 (E.D.N.Y. 2014) ........................................................................ 22

*Davis v. Hain Celestial Group, Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ............................................................... passim

*Day v. Moscow*,
    955 F.2d 807 (2d Cir.) ............................................................................................... 8

*Fermin v. Pfizer Inc.*,
   215 F. Supp. 3d 209 (E.D.N.Y. 2016) ...................................................... 13, 15

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013). ................................................................ 10, 13

*Foman v. Davis*,
   371 U.S. 178  (1962) ................................................................................... 24

*Forschner Grp., Inc. v. Arrow Trading Co. Inc.*,
   30 F.3d 348  (2d Cir. 1994) ........................................................................ 12

*Freeman v. Time, Inc.*,
   68 F.3d 285 (9th Cir., 1995) ....................................................................... 19

*Hemphill v. Schott*,
   141 F.3d 412 (2d Cir. 1998) ....................................................................... 24

*In re 100% Grated Parmesan Cheese Marketing and Sales Litig. Prac.*,
   275 F. Supp. 3d 910 (N.D. Ill. 2017) ................................................... passim

*Irvine v. Kate Spade and Company*,
   2017 WL 4326538, *3 (S.D.N.Y., 2017) ..................................................... 20

*Kommer v. Bayer Consumer Health*,
   252 F. Supp. 3d 304 (S.D.N.Y. 2017) ......................................................... 15

*Liberty Mut. Ins. Co. v. Palace Car. Servs.*,
   2007 WL 2287902, at *2 (E.D.N.Y. Aug. 8, 2007) ..................................... 21

*Local Union 20 v. United Bd. of Carpenters & Joiners of Am.*,
   2001 WL 1005565, at *12 (S.D.N.Y. Aug. 6, 2001).................................... 24

*Mantikas v. Kellogg Company*,
   2017 WL 2371183 (E.D.N.Y., 2017) .......................................................... 14

*McKinniss v. Sunny Delight Beverages Co.*,
   2007 WL 4766525, *4 (C.D. Cal., 2007), .............................................. 14, 18

*Nelson v. MillerCoors, LLC*,
   246 F. Supp. 3d 666 (E.D.N.Y. 2017) ................................................... passim

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic
Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ......................................................................... 8

iii

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
   653 F.3d 241 (3d Cir. 2011) ................................................................. 12

*Rodriguez v. Cheesecake Factory Inc.*,
   2017 WL 6541439, at **5-6 (E.D.N.Y. Aug. 11, 2017) ..................................... passim

*Rodriguez v. It's Just Lunch, Int'l*,
   2010 WL 685009, *9 (S.D.N.Y. 2010) ...................................................... 20

*Shields v. Citytrust Bancorp, Inc.*,
   25 F.3d 1124 (2d Cir. 1994) ................................................................ 22

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) ......................................................................... 20

*Solak v. Hain Celestial Group, Inc.*,
   2018 WL 1870474 (N.D.N.Y., 2018) ...................................................... 18

*Transnational Mgmt. Sys. II, LLC v. Carcione*,
   2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016) ...................................... 21

*Welch v. TD Ameritrade Holding Corp.*,
   2009 WL 2356131, at *26 (S.D.N.Y. July 27, 2009). .................................... 21

*Williams v. Gerber Products Co.*,
   552 F.3d 934 (9th Cir., 2008) .............................................................. 19

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015). ................................................ passim

## STATUTES

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 8

GBL § 349 ........................................................................................ passim

GBL § 350 ........................................................................................ passim

NYGBL § 349 ..................................................................................... 19

<u>PRELIMINARY STATEMENT</u>

Plaintiff, Daniel Okoe, brings this purported class action lawsuit claiming that he was misled by the label on Defendant, Iberia Foods Corp.'s PREMIUM BLEND oil (the "Premium Blend Oil" or "Product") believing it contained only extra virgin olive oil despite the fact that the front label states, in bold letters, PREMIUM BLEND, and just above the words "Extra-Virgin Olive Oil" on the front label, in a darker color, are the words, "Sunflower Oil &".

The Complaint, alleging causes of action under New York General Business Law ("GBL") §§ 349 and 350, and common law fraud, should be dismissed as it has failed to state a cause of action under Fed. R. Civ. P. 12(b)(6).

ONE.   Plaintiff has failed to sufficiently allege that the label is misleading.  The Court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer.  In viewing the alleged misleading statement in the context of the complete front label of the Premium Blend Oil, as is required, the label will not be deemed to be misleading. The accurate disclosure statements appear in contrasting, visible font on the Premium Blend Oil's front label.  The front label, not being cluttered with many distracting elements, includes the disclosure of "Sunflower Oil &" located directly above "Extra Virgin Olive Oil" on the label, and the disclosure "Premium Blend" located above that. By employing the use of the word "blend" the consumer is further advised that the product contains a mixture of different ingredients. A reasonable consumer is, therefore, unlikely to mistakenly believe that the Premium Blend Oil is entirely comprised of a single ingredient, extra virgin olive oil.  These disclosures, being a disclaimer of the alleged misstatement that the product contains only extra-virgin olive oil, will render the allegedly misleading statement on the label non-actionable as a matter of law.

1

In his Complaint the Plaintiff fails to provide any legitimate reason why he, or any reasonable consumer would not have considered the above-noted disclosures on the Premium Blend Oil.

Plaintiff concedes that the information describing the contents of the Premium Blend Oil is contained on the front label. Plaintiff's position, though, is that the words noting the content of sunflower oil are darker then the words noting the content of olive oil. Plaintiff does not allege that the words "Sunflower Oil &" cannot be seen, but rather that, because it is darker than the words extra-virgin olive oil it would be overlooked by a "rushed" customer who would spend scant moments looking at the Premium Blend Oil bottle.

Plaintiff does not describe a reasonable consumer as one that looks at the front label of a product to determine its contents before making a purchase.  Instead, the complaint improbably describes a reasonable consumer to be one that will forgo inspecting the label closely or carefully once captured, as if mesmerized, by conspicuous lettering. Plaintiff seemingly claims to have been so drawn to the words extra-virgin olive oil that he fails to even mention in his Complaint the block letters, all in capital, in highly contrasted green and gold lettering above the words olive oil, stating that the oil is a PREMIUM BLEND.

TWO.  Even if the disclosure of the Premium Blend Oil as a blend might be deemed ambiguous to the reasonable consumer, such ambiguity can be clarified by the ingredients label on the back which specifically states the content and percentages of both sunflower oil and olive oil.

THREE.  Plaintiff has also failed to allege a connection between the misrepresentation and any harm from, or failure of, the product.  Plaintiff's claim, that he would not have purchased the Premium Blend Oil had he been aware of it true contents, is insufficient as a

matter of law.  While allegations that the Plaintiff paid a "price premium" because of the Defendant's misrepresentations may suffice, New York law does not recognize an injury based on deception itself, such as a claim alleging that Plaintiff would not have purchased the Premium Blend Oil but for the deceptive practices.

FOUR.  Being that the label is not misleading, Plaintiff's fraud claim must also fail.

FIVE.  Plaintiff's fraud claim also fails because he cannot satisfy the requirement of reasonable reliance upon the alleged misstatement.  The information available to clarify any alleged misstatement was contained on the label.  A simple review of the Premium Blend Oil label would have dispelled any alleged misrepresentation as to the contents of the bottle.

SIX.  Finally, the fraud claim must fail because plaintiff did not satisfy the heightened pleading requirements to establish fraudulent intent. Plaintiff's allegations of intent are merely conclusory or speculative without any basis in fact.

<u>STATEMENT OF FACTS</u>

Defendant is a wholesale manufacturer and distributor of various food products. Defendant does not sell any products to the consumer directly, but only through retailers. As such, defendant does not set the retail price for any of its products.

In addition to selling bottles of 100% extra-virgin olive oil, and other oil and olive oil related products, defendant sells a blended oil product containing both sunflower oil and olive oil. The blended product containing both sunflower oil and olive oil is prominently labeled just below its name in highly contrasted block letters, PREMIUM BLEND. By the use of this term defendant fully informs the reasonable consumer that the product contains a blend of oils, not one particular type of oil. Below the description, PREMIUM BLEND, on the front label, defendant discloses that the product contains both sunflower oil and extra-virgin olive oil. Such

disclosures are both in the same size font but contrasted differently against the background. The ingredients label on the back of the bottle further specifies not only that the product contains both sunflower oil and olive oil, but the percentages of each.

Below are photographs of (i) the 68 Oz. Premium Blend Oil at issue herein, purchased by Plaintiff at Target for $8.19, and (ii) the product sold by Defendant that <u>does</u> contain 100% extra-virgin olive oil, which Target sells for $7.49 for a 34 oz. bottle, half the size of the 68 Oz. bottle.







Plaintiff, purporting to represent a class of individuals, claims to have been shopping for a product containing only extra-virgin olive oil. He claims to have purchased the Product, in a 68 ounce bottle, at Target in Manhattan at a price of $8.19. Plaintiff, asserting that he wanted extra-virgin olive oil due to its perceived health benefits, does not state whether he had ever purchased extra-virgin olive oil before. He does not state whether he ever purchased the Premium Blend Oil

before.  Nor does he state whether the price paid for this blended oil was less than the price for similarly sized bottles of oil containing only extra-virgin olive oil.

Based upon the allegations in the complaint, it appears that Plaintiff rushed to purchase this Product, claims to have been drawn to the Premium Blend Oil solely based upon its statement that it contains extra-virgin olive oil and did not inspect the label closely or carefully as he had been "captured" by the olive oil disclosure.  Not only does plaintiff allege that he failed to notice the words "Sunflower Oil &" directly above the words "Extra Virgin Olive Oil", but he also failed to make note of the large block letters, in highly contrasted green and gold, placed high on the front label describing the product as a "PREMIUM BLEND".

The allegations in the Complaint did not support Plaintiff's claim that a reasonable consumer acting in a reasonable manner would have been misled into purchasing the Premium Blend Oil believing it to contain only extra-virgin olive oil.

<u>ARGUMENT</u>

The Complaint asserts three causes of action: (1) a claim for violations of GBL § 349; (2) a claim for violations of GBL § 350; and (3) common law fraud.  (Compl. ¶¶ 54-80).  Plaintiff purports to bring these claims on behalf of himself and a putative class of "[a]ll persons or entities in the United States who made retail purchases of the Premium Blend Oil during the applicable limitations period," or alternatively, "[a]ll persons or entities who made retail purchases of the Premium Blend Oil in New York during the applicable limitations period …." (*Id.* ¶ 40-41).

These claims fail as a matter of law.

PLAINTIFF HAS FAILED TO STATE
A CLAIM UPON WHICH RELIEF MAY BE
GRANTED PURSUANT TO RULE 12(b)(6)

I.    PLAINTIFF FAILS TO STATE A CLAIM BECAUSE THE COMPLAINT
DOES NOT PLAUSIBLY ALLEGE THAT A REASONABLE CONSUMER
WOULD BE MISLED BY THE PRODUCT'S LABELING

It is well settled that a plaintiff must plead enough facts in the complaint to state a claim

that is "plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has

facial plausibility when the plaintiff pleads <u>factual content</u> that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>,

556 U.S. 662, 678 (2009) (emphasis added). "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint … has not 'show[n]'

… that the pleader is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (alteration in

original). Rather, the plaintiff must "allege more by way of factual content to nudg[e] his

claim'" of unlawful conduct "across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at

683 (internal quotation marks omitted).    Importantly, a court must "draw on its judicial

experience and common sense" in ruling on a motion to dismiss. *Pension Ben. Guar. Corp. ex*

*rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705,

718 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Further, while the Court must accept the Complaint's allegations of fact as true, it need

not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements." *Iqbal*, 556 U.S. at 683. In addition to the Complaint,

the Court may consider (1) matters of which judicial notice may be taken, such as court records,

*Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.), cert. denied, 506 U.S. 821 (1992); and (2) the

contents of documents that are incorporated by reference in and/or integral to the Complaint.

*Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-53 (2d Cir. 2002).

7

The Complaint fails to state a cause of action under Fed. R. Civ. P. 12(b)(6) as the factual allegations do not satisfy the plausibility requirement that a reasonable consumer would be misled into believing that Defendant's Premium Blend Oil contained <u>only</u> extra virgin olive oil.

THE LABEL AT ISSUE IS NOT MISLEADING

To assert a claim under GBL §§ 349 or 350, "a plaintiff must establish that the defendant engaged in consumer oriented conduct that is materially misleading, and plaintiff was injured as a result of the deceptive act or practice." *See Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017). In order to prove that the alleged conduct was materially misleading, the plaintiff must demonstrate that the conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *See Rodriguez v. Cheesecake Factory Inc.*, 2017 WL 6541439, at *3 (E.D.N.Y. Aug. 11, 2017) (dismissing GBL § 349 and common law fraud claims because the allegedly misleading statement would not mislead a reasonable consumer); *accord Izquierdo v. Modelez Int'l, Inc.*, 2016 WL 6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see also Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 n.1 (2002) (applying identical standard to GBL § 350 claim).

Notably, in his Complaint Plaintiff does not allege that a reasonable consumer acting reasonably would be misled, instead alleging that the label would "mislead the rushed and unsuspecting consumer" (¶3) and that "once their attention has been captured by the much clearer and more conspicuous olive oil disclosure" they will not "inspect the label closely and carefully." (¶29) As such, Plaintiff has failed to satisfy the pleading requirements necessary to assert a claim under GBL §§ 349 or 350, and his claim must fail. However, even under the "reasonable consumer" standard, the Complaint should be dismissed.

Although the "reasonable consumer" inquiry is often a question of fact, "the primary evidence in a false advertising case is the advertising itself." *See In re 100% Grated Parmesan Cheese Marketing and Sales Litig. Prac.*, 275 F. Supp. 3d 910, 921 (N.D. Ill. 2017). Thus, it is "well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer." *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). In making this determination, the court must "view each allegedly misleading statement in light of its context … [t]he entire mosaic is viewed rather than each tile separately." *See Bowring*, 234 F. Supp. 3d at 390 (alteration in original). The context necessarily includes the disclaimers on the product's label:

> Clear disclaimers inform the inquiry into whether a reasonable consumer would be misled by the defendant's conduct. In evaluating the efficacy of such a disclaimer, courts consider factors such as the font size, placement and emphasis. <u>Courts routinely conclude that the presence of a disclaimer, considered in context, precludes the finding that a reasonable consumer would be deceived by the defendant's conduct.</u>

*Id.* (internal citation omitted; emphasis supplied).

By employing this methodology it will be shown that Plaintiff's allegation (¶3), that the Premium Blend Oil's labeling could mislead "[reasonable] consumer[s] into believing that the Premium Blend Oil is entirely comprised of Extra Virgin Olive Oil," has no validity. As discussed below, the context of the entire Premium Blend Oil's front label -- which includes the words "Sunflower Oil &" located directly above "Extra Virgin Olive Oil" on the label, and the words "Premium Blend" located above that -- establishes, as a matter of law, that it would <u>not</u> mislead a reasonable consumer.

As depicted in the photograph above, the Premium Blend Oil's description consumes two lines of text in equally-sized font which states, on the upper line, "Sunflower Oil &" and, on the lower line, "Extra Virgin Olive Oil". The two lines of text are clearly and unmistakably meant to

be read together in order to inform the consumer that the Premium Blend Oil being sold is, in fact, "Sunflower Oil & Extra Virgin Olive Oil".  As is clear from the image of the Premium Blend Oil, the label provides sufficient contrast for the words "Sunflower Oil &" to be visible against the label's background.  Although the text is noticeable even at a glance, any consumer who picks up the container and looks at the label would undoubtedly see the words "Sunflower Oil &" printed thereon directly above the words "Extra Virgin Olive Oil".

Where, as here, an "accurate disclosure statement" appears in "contrasting, visible font" on a product's front label, such a disclaimer will render an allegedly misleading statement on that label non-actionable as a matter of law under GBL §§ 349 and 350.  *See Bowring*, 234 F. Supp. 3d at 390-92; *see also Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 673-676 (E.D.N.Y. 2017).  In *Bowring*, the plaintiff brought a putative class action against the distributor of Sapporo beer in the United States, Sapporo U.S.A., alleging that the distributor misled consumers to believe that Sapporo is brewed in Japan by using the word "Imported" on Sapporo's bottles when, in fact, it is brewed in Canada.  In dismissing the plaintiff's claims under GBL §§ 349 and 350, the court observed that while the Canadian-brewed beer did use the word "Imported" on each bottle, the statement "Brewed and [bottled] by Sapporo Brewing Company, Guelph, Ontario, Canada" was also present in darker contrasting font on the front label.  Although the plaintiff took issue with the "very small font" used for the disclaimer, the court was not similarly concerned, finding that Sapporo's use of the term "Imported" was a "truthful statement" that was "qualified by the visible disclosure statement specifying the beer's origin in Canada."  *Bowring*, 234 F. Supp. 3d at 391-92.  Based upon the fact that "the disclosure statement on Sapporo appear[ed] in contrasting, visible font, and state[d] in clear language where the product is

produced," the court concluded that the distributor's labeling of the product would not mislead a reasonable consumer.  *Id.*

Similar cases abound in which claims of deceptive advertising are dismissed at the pleading stage based upon the presence of disclaimers or other similar clarifying language on the front of the product which negates the allegedly misleading statement.  *See*, *e.g.*, *Nelson*, 246 F. Supp. 3d at 673-76 (dismissing GBL claims against brewer of Foster's Beer alleging that references to Australia on can labels misled consumers to believe that the beer is imported from Australia, since those references were "eclipsed by the accurate disclosure statement" displayed on Foster's Beer labels containing an explicit disclaimer as to the place of production in the United States); *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252-53 (3d Cir. 2011) (explaining that use of the phrase "Havana Club" on a bottle of rum would not mislead a reasonable consumer to believe that the product originated in Cuba when coupled with "an accurate, unambiguous statement" on the label that the rum is "distilled and crafted in Puerto Rico"); *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348, 351-55 (2d Cir. 1994) (holding that use of the phrase "Swiss Army" to label knives manufactured in China did not violate false advertising laws since the phrase was not "geographically descriptive" where the knives were clearly labeled "Made in China").  The outcome should be the same here, since the phrase "Sunflower Oil &" printed on the Premium Blend Oil's front label precludes any confusion by a reasonable consumer as to whether the Premium Blend Oil is comprised entirely of Extra Virgin Olive Oil – it is not.

However, in the unlikely event that the sunflower oil disclosure somehow does not suffice to stave off confusion in the mind of the reasonable consumer, the presence of the phrase

"Premium Blend" printed in highly contrasted, large typeface midway up the Product's front label eliminates any possibility of confusion concerning the Premium Blend Oil's composition.

The Cambridge Dictionary defines the noun "blend" as "a mixture of different things or styles" (https://dictionary.cambridge.org/us/dictionary/english/blend). Armed with such basic knowledge, a reasonable consumer confronted with a prominent disclaimer on the container's front label that the product being purchased is a "Premium Blend," *i.e.* a premium <u>mixture of different ingredients</u>, is unlikely to mistakenly believe that the Premium Blend Oil is entirely comprised of a single ingredient, extra virgin olive oil, as Plaintiff would have this Court believe. Clearly, the accurate, unambiguous disclosure on the front label that the Premium Blend Oil is a "Premium Blend" eclipses any purportedly misleading statement regarding the makeup of the Product. *See Bowring*, 234 F. Supp. 3d at 390-92; *Nelson*, 246 F. Supp. 3d at 673-676.

Plaintiff fails to mention anywhere in the Complaint that the Premium Blend Oil's front label conspicuously states that the Premium Blend Oil is a "Premium Blend". This obvious "omission" is wrongful as "[a] Plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment." *Fink v. Time Warner Cable, 714 F.3d at 742*

Nevertheless, it is axiomatic that "in resolving the reasonable consumer inquiry, <u>[the Court] must consider the entire context of the label</u>." *See Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010) (emphasis supplied); *see also Fermin v. Pfizer Inc.*, 215 F. Supp. 3d 209, 212 (E.D.N.Y. 2016) (explaining that reasonable consumers take into account the written labels on products). Moreover, Plaintiff's seeming failure to read or appreciate the significance of the text on the Premium Blend Oil's front label, aside from the

words "Extra Virgin Olive Oil," is not indicative of a reasonable consumer's behavior in the eyes of the law.

In *McKinniss v. Sunny Delight Beverages Co.*, 2007 WL 4766525, *4 (C.D. Cal., 2007), plaintiff contended that defendant's packaging was deceptive in that, despite the depictions of oranges, apples, and other fruits on their product labels, with names used to describe the various beverages ("Orange Fused Pineapple," "Orange Fused Peach," and the like), the products were little more than sugar water with negligible amounts of juice.  In finding that the product was not misleading, the court noted the words "fruit juice" did <u>not</u> appear on the label and "in the lower right corner of the label, the words "ORANGE FLAVORED CITRUS PUNCH" appeared in capital letters."

The court in *McKinniss* noted that "the depiction of fruit on a product label is not a specific affirmation that a product contains a particular amount of fruit" and that "no reasonable consumer, upon review of the label as a whole (even when, as Plaintiffs suggest, Defendant's product is intentionally placed alongside "real" fruit juices in a retail establishment) would conclude that Defendant's products contain significant quantities of fruit or fruit juice, particularly when the label identifies the product as fruit "flavored" and indicates the exact fruit content of each product." at *4.  "Where a consumer can readily and accurately determine the composition and nutritional value of a product (here, by reading the front and back of the label), no reasonable consumer would be misled or deceived by depictions of fruit on a label" at *4  See also In *Mantikas v. Kellogg Company*, 2017 WL 2371183 (E.D.N.Y., 2017)(Large lettering for "Cheez-It Whole Grain" crackers was not deceptive even though the primary ingredient was enriched white flour, not whole grain, because the statement was factually accurate and elsewhere on the front of the package it stated the amount of whole-grain in each serving.)

13

Similarly, the Product is prominently described on the front label as a blend.  The Where, as here, "[p]laintiff fails to allege in the [c]omplaint any reason why a reasonable consumer would not have considered the disclosures on the [p]roduct," dismissal of the complaint is mandated.  *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 189-194 (E.D.N.Y. 2018) (dismissing GBL and common law fraud claims premised upon allegations that "non-functional slack-fill" ("excessive empty space") in defendant's Swedish Fish brand candy product misrepresented the amount of food being sold, since "a reasonable consumer acting reasonably would find accurate, clearly visible representations of net weight, serving size and number of servings to offset any such misrepresentations"); *see also Daniel v. Tootsie Roll Industries, LLC*, 2018 WL 3650015, *11-14 (S.D.N.Y. Aug. 1, 2018) (finding that the slack-fill in boxes of Junior Mints candy container would not mislead a reasonable consumer, since the boxes prominently displayed statements of net weight, serving size and number of servings per box); *Fermin*, 215 F. Supp. 3d at 211-12 (dismissing consumer fraud claims for allegedly misleading packaging of Advil medications where tablet-count clearly and prominently displayed on each bottle of Advil prevented a reasonable consumer from being misled as to its contents by the size of the packaging).  As Judge Batts succinctly opined, "[a]ssuming that a reasonable consumer might ignore the evidence plainly before him attributes to consumers a level of stupidity that the Court cannot countenance and that is not actionable...."  *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 312 (S.D.N.Y. 2017) (dismissing GBL §§ 349 and 350 claims).  Thus, although Plaintiff may have turned a blind eye to the "Premium Blend" disclosure clearly printed on the Premium Blend Oil's front label, such willful blindness is not characteristic of a reasonable consumer who is unlikely to be misled as to the Premium Blend Oil's composition once exposed to this disclaimer.

14

Having observed the "Premium Blend" disclosure prominently stated on the label, no further context should be necessary for a reasonable consumer to comprehend that the Premium Blend Oil is not comprised entirely of extra virgin olive oil.

IF THE FRONT LABEL OF THE PREMIUM
BLEND OIL IS DEEMED AMBIGUOUS, IT MAY
<u>BE CLARIFIED BY THE INGREDIENTS LABEL</u>

In the unlikely event that there is any ambiguity in the "Premium Blend" disclaimer on the front label, such that it does not fully negate any alleged misstatements on the Premium Blend Oil, additional context provided elsewhere on the bottle, including the back label, may serve to dispel any remaining ambiguity or confusion. *Davis v. Hain Celestial Group, Inc.*, 297 F.Supp.3d 327, 334 (E.D.N.Y. 2018)("If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim.")

As depicted in the image below, the back label of the Premium Blend Oil clearly states in the "Ingredients" section that the Premium Blend Oil contains "80% SUNFLOWER OIL AND 20% EXTRA VIRGIN OLIVE OIL".  This disclosure as to the Premium Blend Oil's ingredients, when considered with any ambiguity created by the disclaimers on the Premium Blend Oil's front label, eliminates any possible doubt in the mind of a reasonable consumer concerning the Product's composition.



In *In re 100% Grated Parmesan Cheese Marketing and Sales Practices Litigation*, 275 F.

Supp. 3d 910 (N.D. Ill. 2017), the plaintiffs brought claims under various state consumer

protection statutes, including the GBL, alleging that the defendants, purveyors of grated

parmesan cheese products, had misled consumers with product labels stating "100% Grated

Parmesan Cheese" because the products actually contained ingredients other than cheese.  In

dismissing those claims, the court held that, while the description "100% Grated Parmesan

Cheese" may be subject to multiple interpretations, the plaintiffs' claims were nevertheless

"doomed by the readily accessible ingredient panels on the products that disclose the presence of

non-cheese ingredients."  275 F. Supp. 3d at 922-24.  In so holding, the court cited to case law

across various districts to arrive at the general principle that

> Where a plaintiff contends that certain aspects of a product's
> packaging are misleading in isolation, but an ingredient label or
> other disclaimer would dispel any confusion, the crucial issue is
> whether the misleading content is ambiguous; if so, context can
> cure the ambiguity and defeat the claim, but if not, then context
> will not cure the deception and the claim may proceed.

*Id.* at 922. (emphasis supplied)

The principle is equally applicable here. Even if the Court were to find that the front label

of the Premium Blend Oil creates an ambiguity to a reasonable consumer as to the Premium

Blend Oil's contents, the ingredient panel on the back will clarify any ambiguity and defeat the

claim.  *Solak v. Hain Celestial Group, Inc*., 2018 WL 1870474 (N.D.N.Y., 2018)(In GBL §§ 349

and 350 claim that packaging of Veggie Straws "create[ ] the erroneous impression that the

whole vegetables depicted in Defendant's Product's marketing and labeling is [sic] present in an

amount greater than is actually the case (at *2), holding that "'any potential ambiguity' that

might arise about the Product's vegetable content as a result of the challenged picture 'could be

resolved by the back panel of the products, which list[s] all ingredients in order of

predominance.'" at *5 quoting *Workman v. Plum Inc.,* 141 F. Supp. 3d 1032, 1035 (N.D. Cal.

2015).  See also *McKinniss v. Sunny Delight Beverages Co*., 2007 WL 4766525, *4* wherein the

court noted that "on the back of the label, water and high fructose corn syrup are listed as the

most prominent ingredients and the percentage of actual juice fully disclosed."

Notably, wherein *In re 100% Grated Parmesan Cheese* there was no finding of deception

when the label described the product therein as "100% Parmesan Cheese" but contained other

ingredients,  the Premium Blend Oil, which did <u>not</u> use the term "100%" olive oil, or any term

expressing a similar concept anywhere on the label, should certainly not merit any finding of

deception.  See also *Workman v. Plum Inc*., supra at 1035.  (Product displaying pictures of fruit, but not all or most prominent ingredients, was not deceptive as the label contained no affirmative misrepresentations because all of the items pictured were actually present in the product. "Moreover, any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA).  cf *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir., 2008)(Finding deception where there were pictures of items <u>not</u> in the product)

As the court stated in *In re 100% Grated Parmesan Cheese*, "consumers who interpret ambiguous statements in an unnatural or debatable manner do so unreasonably if an ingredient label would set them straight."  *Id.*  See also *Freeman v. Time, Inc*., 68 F.3d 285, 290 (9th Cir., 1995)(Concerning alleged misleading sweepstakes promotional materials, "[a]ny ambiguity that Freeman would read into any particular statement is dispelled by the promotion as a whole.")

Here, Plaintiff cannot escape the inevitable conclusion that a reasonable consumer possessing any doubt as to whether the Premium Blend Oil contains only extra virgin olive oil would be dispossessed of any such confusion upon consulting the ingredient label stating the ingredients to be <u>80% sunflower oil</u> and 20% extra virgin olive oil.

In sum, Plaintiff's failure to plausibly allege facts demonstrating that the labeling of the Premium Blend Oil is likely to mislead a reasonable consumer acting reasonably under the circumstances requires the dismissal of Plaintiff's GBL claims.

II.    <u>PLAINTIFF DID NOT ALLEGE AN INJURY UNDER THE GBL</u>

In order to claim an injury under GBL §§ 349 and 350 "Plaintiff must allege a connection between the misrepresentation and any harm from, or failure of, the product.'" *DaCorta v. AM Retail Group, Inc*., 2018 WL 557909, *7 (S.D.N.Y., 2018) quoting *Small v. Lorillard Tobacco*

*Co., Inc.*, 94 N.Y.2d 43, 56 (1999).  "Such actual injury 'may be shown by allegations that the

plaintiff paid a "price premium" because of the defendant's misrepresentation or by allegations

that the plaintiff did not receive the product for which he bargained.'" *Irvine v. Kate Spade and

Company*, 2017 WL 4326538, *3 (S.D.N.Y., 2017) quoting *Belcastro v. Burberry Ltd.*, 2017 WL

744596, at *3 (S.D.N.Y. Feb. 23, 2017).  "But New York law does not recognize an injury based

on deception itself—the fact that Plaintiff was deceived is not, standing alone, an 'actual

injury.'" Id. at *3.  citing *Small*, 94 N.Y.2d at 56.

 "The central issue [is] whether [Plaintiff] has alleged a cognizable "actual" injury that is

separate from [Defendant's] allegedly deceptive conduct. *Belcastro v. Burberry Limited*, 2017

WL 5991782, *3 (S.D.N.Y., 2017).  The Complaint herein alleges that "[i]f Plaintiff had known

the Product was 80% sunflower oil, he would not have purchased it." (¶15).  "'[C]onsumers who

buy a product that they would not have purchased, absent a manufacturer's deceptive commercial

practices,' have not suffered an injury cognizable under NYGBL § 349.  As deception cannot be

'both act and injury'".  *Rodriguez v. It's Just Lunch, Int'l,* 2010 WL 685009, *9 (S.D.N.Y. 2010)

quoting *Small*, 94 N.Y.2d at 56.  Consequently, "[s]imply alleging that a plaintiff 'would not

have purchased' the product but for the deceptive practices, is, alone insufficient' to properly

plead an injury under GBL §§ 349 and 350. *DaCorta v. AM Retail Group, In*c., 2018 WL 557909

*7 (S.D.N.Y., 2018) citing *Small v. Lorillard Tobacco Co., Inc.*, 94 N.Y.2d at 56.   See also

*Braynina v. TJX Cos.*, 15-CV-5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016).

Plaintiff has failed to plead an injury under GBL §349 and ¶350.

III.    PLAINTIFF'S COMMON LAW FRAUD CLAIM MUST BE
        DISMISSED BECAUSE THE LABEL IS NOT MISLEADING

Plaintiff's fraud claim must be dismissed because the label is not misleading.  In general,

to plead a common law fraud claim, a plaintiff must establish that: "(1) the defendant made a

material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the

plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a

result of such reliance."  *Liberty Mut. Ins. Co. v. Palace Car. Servs.*, 2007 WL 2287902, at *2

(E.D.N.Y. Aug. 8, 2007) (internal quotation marks omitted).  Fraud claims also must be pleaded

with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure.  *See Welch v.

TD Ameritrade Holding Corp.*, 2009 WL 2356131, at *26 (S.D.N.Y. July 27, 2009).

Plaintiff's failure to state a cause of action that the Premium Blend Oil label misrepresents

its contents under GBL §§ 349 and 350, will also result in a dismissal of a fraud claim alleging

misrepresentation. *Nelson*, 246 F. Supp. 3d at 677-678.

IV.    PLAINTIFF'S COMMON LAW FRAUD CLAIM MUST BE DISMISSED
       BECAUSE PLAINTIFF CANNOT ESTABLISH REASONABLE RELIANCE

Plaintiff is also unable to satisfy the pleading requirement of reasonable reliance when,

'by the exercise of ordinary intelligence [he] could have learned of the information it asserts was

withheld.' " *Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d at 199 quoting *Transnational Mgmt.

Sys. II, LLC v. Carcione*, 2016 WL 7077040, at *8 (S.D.N.Y. Dec. 5, 2016), *appeal dismissed

sub nom.*  As described above, all of the information concerning the contents of the Premium

Blended Oil is on its labels.  "Since a simple 'investigation' would have dispelled any

misrepresentation as to the [contents of the bottle], Plaintiff's common law fraud claim [should

be] foreclosed as a matter of law. Id. at 199-200. See also *Daniel v. Tootsie Roll Industries, LLC*, 2018 WL 3650015, *15.

V.    **PLAINTIFF'S COMMON LAW FRAUD CLAIM MUST BE DISMISSED BECAUSE HE FAILS TO SUFFICIENTLY ALLEGE FRAUDULENT INTENT**

Plaintiff's fraud claim must also be dismissed because he fails to allege any specific facts that show that Iberia acted with fraudulent intent.

Importantly, to plead a fraud claim, the law requires allegations of specific facts "that give rise to a *strong inference* of fraudulent intent." *Dash v, Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp. 3d 357, 362 (E.D.N.Y. 2014) (emphasis added; citation omitted); *accord Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Such a strong inference may be established by either (a) alleging facts to show that defendant had both motive and opportunity to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *See Davis v. Hain Celestial Group, Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018). Courts routinely dismiss common law fraud claims in similar cases where the complaint failed to allege facts giving rise to a strong inference of fraudulent intent. *See*, *e.g.*, *Davis*, 297 F. Supp. 3d at 337 (finding that allegations that "[d]efendants knew that other juice products more accurately represented their products" failed to adequately plead fraudulent intent in a case alleging mislabeling on juice products); *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 560 (S.D.N.Y. 2016) ("To the extent that the FAC could be construed as pleading that BMW acted to increase sales/profits, a generalized motive that could be possessed by any corporate actor or director or officer is insufficient."); *Dash*, 27 F. Supp. 3d at 362-63 (dismissing fraud claim because allegations that manufacturer "intentionally concealed and failed to disclose the true facts about the … [p]roducts" to induce consumers to purchase the product were conclusory and failed to adequately plead fraudulent intent).

21

Here, Plaintiff's sparse, conclusory allegations in support of its common law fraud claim do not give rise to the strong inference of fraudulent intent necessary to survive a motion to dismiss.

In support of its fraud claim, Plaintiff alleges that "[Iberia's] deceptive practices were knowing and willful, since they were precisely calibrated to induce consumer confusion." (Compl. ¶ 77).  That allegation is wholly conclusory on its face and does not satisfy the stringent pleading requirements of Rule 9(b).  First, stripped of legalese, the allegation at issue is a tautology, stating that Iberia acted with fraudulent intent (*i.e.* "knowingly and willfully") because its actions were intended to defraud consumers (i.e. "precisely calibrated to induce consumer confusion").  As such, this allegation is purely conclusory and carries no weight.

Moreover, Plaintiff does not support its fraud claim with any specific facts giving rise to a strong inference of fraudulent intent.  Although Plaintiff claims in conclusory fashion that Plaintiff's labeling of the Premium Blend Oil was "precisely calculated to induce consumer confusion," nowhere in the Complaint does Plaintiff assert facts evidencing any conscious, calculated decision by Iberia to label the Premium Blend Oil in a manner to purposely mislead or confuse consumers about the composition of the Premium Blend Oil.  For example, plaintiff fails to consider the possibility that the prominence of extra-virgin olive oil on the label was simply intended to highlight the existence of olive oil in the product, not that it was the only oil in the product.  See *Workman v. Plum Inc*., supra at 1035.  (Product displaying pictures of fruit, but not all or most prominent ingredients, was not deceptive as the label contained no affirmative misrepresentations because all of the items pictured were actually present in the product.)

Plaintiff's citations to industry research and literature on the subject of labeling are irrelevant to establishing fraudulent intent.  (Compl. ¶¶ 26-28, 30).  The content of the articles is

entirely general in nature with no mention whatsoever of the Premium Blend Oil, its labeling or Iberia's decisions in connection therewith.  Without any specific facts pertinent to the instant action, Plaintiff is not entitled to any inference of fraudulent intent, let alone a strong inference.

Unable to allege any facts evidencing conscious misbehavior or recklessness by Iberia, Plaintiff would need to allege facts showing that Iberia had both motive and opportunity to commit fraud in order to establish a strong inference of fraudulent intent.  Plaintiff fails in that regard as well.

To the extent that Plaintiff relies upon profit motive as evidence of fraudulent intent, alleging that "[Iberia] has collected millions of dollars from the sale of its Premium Blend Oil that it would not have otherwise earned" (Compl. ¶ 8), such reliance is misplaced.  It is axiomatic that a "generalized motive to satisfy consumers' desires [or] increase sales and profits" is not sufficient to establish fraudulent intent.  *See Davis*, 297 F. Supp. 3d at 337; *See also Rodriguez v. Cheesecake Factory Inc.*, 2017 WL 6541439, at **5-6 (E.D.N.Y. Aug. 11, 2017); *Catalano., LLC*, 167 F. Supp. 3d at 560.  Thus, Plaintiff's threadbare allegations that Iberia purportedly profited from the sale of the Premium Blend Oil are insufficient as a matter of law to establish fraudulent intent in connection with Iberia's labeling of the Premium Blend Oil.

Finally, Plaintiff's allegation that "there could be no reason for [Iberia] making a secondary (but more valuable) ingredient more prominent and conspicuous than the primary (but less valuable) ingredient other than to deceive"  (*Id*. ¶ 62), is precisely the sort of speculative, conclusory assertion that flies in the face of Rule 9(b)'s heightened pleading requirements. Plaintiff's unsubstantiated guesswork as to the reasoning behind the labeling of the Premium Blend Oil is not a valid substitute for the pleading of specific facts establishing a strong inference

of fraudulent intent.  In the total absence of any such facts set forth in the Complaint, Plaintiff's

common law fraud claim should be dismissed.

## VI.    PLAINTIFF SHOULD BE DENIED LEAVE TO AMEND

No further amendment will cure the deficiencies in the Complaint.  The Court in its

discretion may deny leave to amend where any proposed amendment would be futile.  *Hemphill*

*v. Schott*, 141 F.3d 412, 420 (2d Cir. 1998) (holding that a court may exercise its discretion to

deny a party's motion to amend a pleading for undue delay, bad faith, undue prejudice, or when

the proposed amendment would be futile) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff cannot cure the deficiencies in the Complaint because no reasonable consumer

would review the packaging for the Premium Blend Oil and not understand that is a blend of oils,

specifically sunflower oil and extra virgin olive oil.  As each of Plaintiff's claims requires a

misrepresentation with respect to the labeling of the Package, there are no additional facts which

can be pled to establish a plausible claim against Iberia.  Accordingly, the Court should deny

Plaintiff leave to amend.  *See Local Union 20 v. United Bd. of Carpenters & Joiners of Am.*,

2001 WL 1005565, at *12 (S.D.N.Y. Aug. 6, 2001) ("An amendment is futile if it merely

restates the same facts as the original complaint in different terms.") (citation omitted).

## CONCLUSION

For the reasons cited above, Iberia respectfully requests that the Complaint be dismissed

with prejudice.

Dated : New York, New York
        December 7, 2018

CYRULI SHANKS HART & ZIZMOR LLP
Attorneys for Defendant
420 Lexington Avenue
Suite 2320
New York, New York 10170
(212) 661-6800

24